**BURCH v. SLICK et al.**

No. 24248. Feb. 27, 1934.

Rehearing Denied April 10, 1934.

Duncan & DeParade. for petitioner.

Thurman, Bowman & Thurman, for respondent.

SWINDALL, J. The petitioner received a serious back injury on August 25, 1930, and the respondents T. B. Slick, the employer, and Century Indemnity Company, the insurance carrier, voluntarily paid compensation for temporary total disability from September 1, 1930, to April 24, 1931; and on May 16, 1931, the employer and insurance carrier notified the State Industrial Commission that compensation had been discontinued for the reason that they alleged claimant was not then disabled as the result of said original injury. On July 1, 1931, the Commission, pursuant to notice to all parties, held a hearing to determine extent of disability. Dr. McBride testified at said hearing that upon an X-ray examination of claimant, petitioner herein, the claimant showed a fracture about the second, third, and fourth transverse processes, and that there was apparently early union of the second, but the third and fourth were still slightly separated. It was his opinion at that hearing that there would be some permanent disability due to soreness and stiffness in claimant's back. He estimated that the healing period had ended approximately April 1, 1931; that claimant would be able to do ordinary manual labor, but would be limited to a certain extent about lifting heavy objects and in occupations which caused him to bend forward and pick up things from the ground; that his arms, legs, and shoulders will be unaffected as long as his back does not involve muscular strain. Dr. McBride estimated claimant's permanent disability based on that examination at about 25 per centum. On July 2, 1931, the State Industrial Commission made the following findings of fact:

"1. That on the 25th day of August, 1930, the claimant herein was in the employ of this respondent and engaged in the performance of manual labor as defined by the Workmen's Compensation Law; that arising out of and in the course of said employment, the claimant, on August 25, 1930, sustained an accidental injury to his back, resulting in fracture of the 2nd, 3rd and 4th vertebrae;

"2. That, as a result of said accidental injury the claimant has been since August 25, 1930, and was at the time of this hearing, totally disabled from the performance of ordinary manual labor;

"3. That the average wage of the claimant at the time of said injury was $130 per month."

The Commission awarded the claimant compensation at the rate of $18 per week from August 25, 1930, to July 1, 1931, less the 5-day waiting period, and to continue thereafter not to exceed 300 weekly payments in all, or until otherwise ordered by the Commission. On October 10, 1932, the Commission held another hearing to determine the extent of claimant's disability. In addition to the testimony taken at the former hearing, testimony was offered, and it was agreed that a report submitted by Dr. Leroy Long, Sr., might be considered as his evidence, his qualifications as an expert being admitted. He gave a full history of the claimant's condition and concluded with the statement that:

"I believe that this man is able to do work in a modified way, but I believe that he will have some pain and stiffness indefinitely. Taking all things into consideration, I believe that he has a partial permanent disability due to the injury of 20 per cent."

There was other expert testimony offered to the effect that claimant was totally disabled at the date of the last hearing. Upon consideration of the evidence, the Commission, among other things, found that:

"2. As a result of said accidental injury claimant was temporarily totally disabled from the date of said injury to July 1, 1932; and

"3. As a further result of said injury claimant has suffered a permanent partial disability by reason of which his wage-earning capacity is now $3 per day, or a decrease of $2 per day, the average wage of claimant at the time of said injury having been $5 per day; and, as a result of the aforementioned injury and resulting permanent partial disability, claimant is entitled to sixty-six and two-thirds per cent. of the difference between his average weekly wages at the time of said injury and his wage-earning capacity after July 1, 1932, and during the continuance of such permanent partial disability, not to exceed 300 weeks."

The Commission made an error in fixing the award under the findings, and on October 31, 1932, filed a corrected order in which they recited the claimant's weekly compensation should be $8 per week on account of decreased earning capacity, not to exceed 300 weeks for the permanent partial dis-

ability of claimant, subject to reconsideration of degree of such impairment by the Commission on its own motion or upon application of any party in interest.

The Commission further ordered that every fourth week of the compensation awarded claimant be paid to E. B. Duncan, as attorney of record herein, until he has been paid a total of 15 weeks, as payment in full for legal services rendered the claimant in this cause.

The petitioner has filed an original proceeding in this court to review the order of October 21, 1932, and the corrected order of October 31, 1932.

Petitioner's first contention is that there is not any competent evidence to sustain the finding of the Commission that petitioner has a wage-earning capacity of $3 per day. Petitioner testified relative to his ability to work substantially as follows:

"I am not able to do any heavy work, and I have never found any light work I could do. * * * I might work. * * * I might be able to fire boilers if I could find such a job. * * * I am barred from doing heavy work because of stiffness in my back, and (the) like; if I walk a long ways my back gets sore—gets sore and stiff."

He also testified that about 30 days prior to the last hearing, he tried to help his father-in-law fill a ditch, and after working an hour or so his back got to hurting and he had to quit. Relative to his efforts to obtain work, in response to the question, "What attempt have you made to find work?" he answered, "Well, like any man does. Kind of looked around to see what they could find." And in answer to the question, "Where have you looked or inquired?" he answered, "Well, I just—no place in particular. Just fellows that I know that does light work." And in answer to the question, "What kind of work?" he answered, "Oh, such as paper hanging and painting and jobs like that. * * *" The claimant was not working at the date of the last hearing and has not worked since the date of the accidental injury involved.

The Commission has the power to weigh the evidence and draw its own conclusions, and such Commission, like a court or jury, may draw reasonable inferences from the facts and circumstances in evidence, and where it draws such inferences from facts and circumstances which in their nature are such that reasonable men might draw either the same or opposite inferences, this court

will not say that the facts found as a result of such inferences are not sustained by sufficient evidence.

Incapacity cannot be presumed from the mere inability to obtain work. Compensation is payable for inability to do work or to obtain work because of the physical condition of the workman due to the accident. If the workman is less able to compete in the labor market or his earning capacity might be less in the future than it was before the accident, as a result of the accident, these facts should be taken into consideration by the Commission in determining claimant's wage-earning capacity. Compensation, if due at all, is to be measured by the prescribed percentage of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability as provided in section 13356, O. S. 1931. See, also, Schneider, Workmen's Compensation Law, vol. 2 (2d Ed.), sec. 403; Jordan v. Decorative Company (N. Y.) 130 N. E. 634; In re Durney's (Mass.) 111 N. E. 166. Such is the holding of this court in the case of Texas Co. v. Roberts, 146 Okla. 140, 294 P. 180, wherein we said:

"In this class of disabilities the compensation shall be sixty-six and two-thirds per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise payable during the continuance of such partial disability, not to exceed 300 weeks, but subject to reconsideration of the degree of such impairment by the Commission on its own motion or upon the application of any party in interest."

The Commission considered the evidence of the experts that the claimant was unable to perform labor, and the testimony of the experts that he had from 20 to 25 per centum permanent disability, and the testimony of the claimant as to what work he could perform, and his testimony relative to his efforts to secure employment. It rejected the opinion of the experts that the claimant had no wage-earning capacity, and approved the opinion of the experts that he had a permanent disability of from 20 to 25 per centum. It appears from the entire record that the Commission has given the facts a careful consideration, and we cannot say as a matter of law that claimant, whose permanent disability is only from 20 to 25 per centum, has no wage-earning capacity. Neither can we say that, under the facts as disclosed by the record, the claimant has

diligently attempted to secure work. This case comes under the "other cases" clause of the Workmen's Compensation Law, and the degree of impairment is subject to reconsideration by the Commission on its own motion or upon the application of any party in interest at any time. From a careful consideration of the record, we are of the opinion that the Commission was justified in making the finding it did at the time of the last hearing. If it was mistaken relative to the wage-earning capacity of the claimant, it has the power and jurisdiction to increase or diminish the award upon further hearing. We sustain the award as made under the circumstances.

The next proposition urged by petitioner is that no claim was made for attorney's fees and no evidence was offered relative to what was a reasonable attorney's fee under the circumstances of the case. Section 13364, O. S. 1931, provides in part that:

"Claims for legal services in connection with any claim arising under this act, * * * shall not be enforceable unless approved by the Commission. If so approved, such claim or claims shall become a lien upon the compensation awarded, but shall be paid therefrom only in the manner fixed by the Commission."

We have carefully examined the record and fail to find where any claim for legal services has been made or presented to the Commission, and under such circumstances we are of the opinion that no portion of the award should be ordered paid as attorney's fees. If claim is made for legal services in connection with this cause, the same should be submitted to the Commission and the Commission should hear the same, and no claim for attorney's fees is enforceable unless approved by the Commission. The attorneys appearing for the petitioner are objecting to any allowance for attorney's fees, and if they do not desire compensation for their services out of the award made the claimant, we think that neither this court nor the Commission should require them to take the same, so that portion of the award is vacated.

The award is affirmed as to compensation and vacated as to attorney's fees, without prejudice to attorneys filing claims for compensation in the event they desire to do so.

RILEY, C. J., and McNEILL, BAYLESS, and WELCH, JJ., concur.